FILED

AUG 03 2026

IN THE UNITED STATES DISTRICT COURT CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION                          BY_____
                                                      DEPUTY

IN RE *EX PARTE* APPLICATION OF     §
RICHARD GOATLEY FOR AN ORDER        §        1:26MC02146 ABD
PURSUANT TO 28 U.S.C. § 1782        §
                                    §        Misc. No. _____
                                    §
                                    §

---

**EX PARTE APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY
FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

---

**TO THE HONORABLE DISTRICT JUDGE:**

**COMES NOW**, Richard Goatley, by and through his undersigned counsel, and files this *Ex Parte* Application for an Order Authorizing Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, respectfully showing the Court as follows:

## I. INTRODUCTION

1.      Applicant Richard Goatley ("Applicant" or "Goatley") applies ex parte under 28 U.S.C. § 1782 for an order authorizing service of a subpoena duces tecum on X Corp., which operates the X (formerly, Twitter) platform. The subpoena seeks non-content records for one anonymous or pseudonymous X account, handle @TruthMiddl82575, User ID 193035686858263756, display name "Truth@MiddlesexCCC" (the "Account"). Goatley will use the records in *Goatley v. Middlesex County Cricket Club Ltd*, Claim No. KB-2024-001056, a civil claim pending in the High Court of Justice, King's Bench Division, London (the "UK Proceeding").

2.      Goatley sued Middlesex County Cricket Club Ltd ("Middlesex" or the "Club") for psychiatric injury caused by workplace stress, breach of a settlement agreement containing mutual non-disparagement obligations, harassment under the Protection from Harassment Act 1997, misuse of private information, and violations of the UK Data Protection Act 2018 and the UK General Data Protection Regulation ("UK GDPR").

3.      From July 2025 through the date of filing this Application, the Account has published a stream of posts accusing Goatley of theft and fraud and targeting his family members by name, echoing allegations at issue in the UK Proceeding. Whether Middlesex or someone acting at its direction operates the Account bears directly on Goatley's harassment and non-disparagement claims, and only X Corp. holds the records that can identify the operator of the Account.

4.      X Corp. maintains its registered office in Bastrop, Texas, within the Austin Division for the United States District Court for the Western District of Texas, and each statutory requirement of § 1782 is satisfied on the facts of this case. *See Texas Keystone, Inc. v. Prime Nat. Res., Inc.,* 694 F.3d 548, 553 (5th Cir. 2012). Each of the discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264–65 (2004), favors the granting of this Application for the requested discovery.

## II. PARTIES, JURISDICTION & VENUE

5.      Applicant Richard Goatley is a resident of Jeddah, Saudi Arabia and the Claimant in the UK Proceeding. Middlesex is the Defendant in the UK Proceeding. X

Corp. is not a party to the UK Proceeding and is the nonparty from which discovery is sought.

6.      This Court has authority under 28 U.S.C. § 1782(a) to consider the Application because X Corp. is found in this District. X Corp. operates the X platform from its registered office at 865 FM 1209, Building 2, Bastrop, Texas 78602, and its published legal guidance directs legal requests concerning X accounts to that address.

7.      Venue is proper in this District under 28 U.S.C. § 1782(a), which directs the application to "[t]he district court of the district in which a person resides or is found," and Bastrop County lies within the Austin Division. 28 U.S.C. § 124(d)(1).

8.      All exhibits attached hereto are incorporated herein by reference.

## III. FACTUAL BACKGROUND

### A.      THE UK PROCEEDING

9.      Goatley served as Chief Executive Officer of Middlesex, a professional cricket club based at Lord's Cricket Ground in London, from October 12, 2015 until July 12, 2021. On April 12, 2021, he suffered a transient ischemic attack during a meeting at work. The Particulars of Claim allege that years of excessive workload and unaddressed stress caused that injury. Goatley's employment with Middlesex ended and he and Middlesex entered into a settlement agreement dated July 2, 2021 (the "Settlement Agreement").

10.     The Settlement Agreement contains mutual non-disparagement obligations. Clause 3.2 of that agreement requires both parties to refrain from making "disparaging or derogatory statements, whether in writing or otherwise (including via

any social networking site or otherwise)," and to make "reasonable endeavours to procure that any person on their behalf will not" do so, with the Employer's obligation under that clause "limited to members of the Board and honorary officers of the Employer." Clause 3.4 prohibits the Club from making any statement about Goatley to the press, media, or any other person for publication without first providing Goatley a copy, and separately prohibits the Club from making, publishing, or communicating "to any person any disparaging, derogatory or negative statements, whether in writing or otherwise, concerning" Goatley. Ex. 5, Settlement Agreement.

11.    The Particulars allege that, between May 2022 and February 2025, officers, employees, and representatives of Middlesex repeatedly accused Goatley of financial mismanagement, theft, and fraud, in public and in private, and that the Club announced through *The Guardian* newspaper on February 7, 2025 that it recovered £100,000 in payments it characterized as incorrectly made to Goatley. That claim was false. In reality, Middlesex recovered £43,000 from a pension fund in June 2022, which was due to pension errors. The remaining £57,000 has never been recovered from Goatley. Goatley has alleged in the UK Proceeding that Middlesex's conduct breached the Settlement Agreement, constitutes harassment, and caused him severe psychiatric injury.

12.    Goatley filed the Particulars of Claim on March 27, 2025, and the claim remains pending before the High Court. Ex. 1, Particulars of Claim. Declarations of Goatley and of his UK counsel are attached this Application as Exhibits 2 and 3.

**B.    THE ANONYMOUS/PSEUDONYMOUS ACCOUNT**

13.    A capture of X's "About this account" panel, authenticated in Daisy Ayliffe's declaration, indicates that the Account was created in June 2025, is based in the United Kingdom, and connects through X's Android application. Ex. 9, Ayliffe Decl.; Ex. 4, X URLs. The Account displayed the default X profile image rather than an image of the account owner and no post made from the Account identifies the account owner. Ex. 6, Account Profile Capture.

14.    Goatley has obtained and preserved documentation of most of the Account's output. Exhibit 4 hereto compiles 108 posts, each identified by its unique status URL and captured by screenshot, while the Account's profile reported 114 total posts as of the most recent capture. Ex. 6, Account Profile Capture; Ex. 9, Ayliffe Decl. The posts compiled in Exhibit 4 display dates from July 12, 2025 through July 11, 2026, and 39 of those posts appeared in July 2026. The Account has continued to post since that capture.

15.    Substantially all of the documented posts concern Goatley, his former wife Lucy Ayliffe, his sister-in-law Daisy Ayliffe, or the dispute with Middlesex. A post dated June 14, 2026, for example, asked whether "Lucy Ayliffe, Richard Goatley's wife" knew "about the unauthorised £100,000" and suggested that part of it went into a joint account owned by Goatley and his wife. In another example, a post dated May 23, 2026 accused Daisy Ayliffe, a BBC journalist, of running a "DEAD CAT POLICY" to distract from Goatley's alleged "UNAUTHORISED PAYMENTS." Many of the posts tag journalists, cricket commentators, and public figures to widen the reach of the posts.

16.    Both example posts in the preceding paragraph repeat the £100,000 figure from the Club's February 7, 2025 statement published by *The Guardian*, pleaded at paragraph E108 of the Particulars, so the Account echoes the same allegations at issue in the UK Proceeding. Whether its posts are attributable to Middlesex or to someone acting at its direction is an open question that bears directly on the pleaded harassment and non-disparagement claims.

17.    The Account appeared in June 2025, approximately three months after Goatley filed his Particulars of Claim, it repeatedly targets the parties and the dispute, and it recites developments in the litigation as they occur. The records Goatley seeks to obtain through this Application are expected to identify the Account owner/operator. That information is material to the UK Proceeding.

C.    RELEVANCE OF THE REQUESTED RECORDS TO THE UK CLAIMS

18.    The operator's identity affects the UK Proceeding in several ways. If a member of the Club's Board or an honorary officer operates the Account, its posts breach Clause 3.2 of the Settlement Agreement, which prohibits disparaging statements made "via any social networking site." If the Club operates the Account or directs its content, whether directly or through any person, the posts breach Clause 3.4, which contains no comparable limitation. And if any officer, employee, or agent of Middlesex operates it, the posts extend the course of conduct pleaded under section 1 of the UK's Protection from Harassment Act 1997. Publication of Goatley's private information without consent is relevant to Goatley's claims for misuse of private information, breaches of the UK Data

Protection Act 2018 and the UK GDPR. Goatley cannot identify the Account owner without the records X Corp. maintains.

## IV. <u>THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF § 1782</u>

19.    Section 1782(a) authorizes a district court to order a person who "resides or is found" in the district to produce documents "for use in a proceeding in a foreign or international tribunal" upon the application of "any interested person." Section 1782 requires an applicant to demonstrate three things, namely, that (i) the target must reside or be found in the district, (ii) the discovery must be for use before a foreign or international tribunal, and (iii) the application must come from a foreign tribunal or an interested person. *Texas Keystone*, 694 F.3d at 553. As set forth below, each of those elements is satisfied here.

20.    First, X Corp. resides and is found in this District. X's published Terms of Service identify X Corp.'s registered office as 865 FM 1209, Building 2, Bastrop, Texas 78602, X Corp. operates from that location, and Bastrop sits within the Austin Division of the Western District of Texas. Ex. 7, X Terms of Service; Ex. 10, Fasthoff Decl.

21.    Second, the discovery sought in the matter is for use in a foreign proceeding. The UK Proceeding is pending before the High Court of Justice, a civil court that fits within the definition of § 1782(a). Fifth Circuit has previously applied § 1782(a) in aid of litigation pending in the UK's High Court of Justice. *Texas Keystone*, 694 F.3d at 551–53.

22.     Third, Goatley is an interested person. As the Claimant in the UK Proceeding, Goatley is the paradigmatic "interested person" under the statute. *Intel*, 542 U.S. at 256.

## V.  **THE *INTEL* FACTORS FAVOR GRANTING THE APPLICATION**

23.     Once the statutory showings required by § 1782 are made, a court is to weigh the four factors identified in *Intel*, 542 U.S. at 264–65 for determining whether an application under that statute should be granted, namely, (i) whether the person from whom discovery is sought is a participant in the foreign proceeding, (ii) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to federal-court judicial assistance, (iii) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or of the United States and (iv) whether the request is unduly intrusive or burdensome. On the facts of this case, each of those factors favors the Applicant.

24.     First, X Corp. is not a participant in the UK Proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding…the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Nonparticipants "may be outside the foreign tribunal's jurisdictional reach," so "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* X Corp. isn't a party in London, the records requested are not available from Middlesex, and UK counsel has identified no practical English disclosure mechanism that reaches them. Ex. 3, Miers Decl.

25. Second, the UK High Court will receive the evidence. UK counsel's declaration describes the current posture of the UK Proceeding, explains how Goatley will use the records in that proceeding, and demonstrates that UK counsel knows of no objection by the UK court to evidence gathered through United States judicial assistance. Ex. 3, Miers Decl. The UK's receptivity to § 1782 assistance is well established, as the House of Lords held that the unavailability of particular discovery under English law did not prevent a litigant in UK proceedings from seeking § 1782 assistance in the United States. *See Intel*, 542 U.S. at 261–62 (discussing *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24).

26. Third, the Application does not conceal an attempt to circumvent UK proof-gathering restrictions. UK counsel investigated the available English routes and explains why nothing under UK law permits discovery of records held by X Corp. in the United States. Norwich Pharmacal relief, which the principal English mechanism for identifying an unknown wrongdoer, requires a UK court to exercise jurisdiction over the respondent, which forecloses any practical route to obtain the records from X Corp. Ex. 3, Miers Decl.

27. Fourth, the request to obtain the records sought herein is neither unduly intrusive nor burdensome. The proposed subpoena covers a single account over a defined period, from the Account's creation in June 2025 through the date of production, and seeks only non-content records, such as subscriber and registration information, account creation records, IP address logs with timestamps, device identifiers, and records identifying linked accounts. Applicant's request does not seek the content of the

posts, direct messages, or other communications content. The Stored Communications Act permits a provider to disclose non-content records to a non-governmental entity under 18 U.S.C. § 2702(c)(6). X Corp. maintains these records sought herein in the ordinary course of its business, and its published legal guidelines describe production of non-public account information in response to valid legal process.

## VI. *EX PARTE* CONSIDERATION IS APPROPRIATE

28. Courts consider § 1782 applications *ex parte* because the respondent retains protections to move to quash or modify the subpoena under Federal Rule of Civil Procedure 45, and may challenge both the statutory showing and the *Intel* analysis. See *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469 (5th Cir. 2022).

## VII. REQUEST TO DEFER NOTICE TO THE ACCOUNT HOLDER

29. Applicant requests a provision deferring X Corp.'s notification of the Account holder for 90 days following service. The provision is necessary because X Corp.'s published policy is to attempt to notify an account holder of a legal request pertaining to the account unless a court prohibits it, and X Corp.'s published guidelines ask that any non-disclosure provision state a specific duration. The Account is anonymous or pseudonymous and repeatedly targets Goatley, his family members, and the Middlesex dispute. Its posts recite developments in the UK Proceeding, so the Account operator clearly follows the UK litigation, and 39 posts in July 2026 alone show that the Account's smear campaign is accelerating. If the Account holder learns of the subpoena before X Corp. produces responsive records, the Account holder may delete

the Account and abandon the email address and telephone number that tie X Corp.'s records to a person. Ex. 8, X Legal FAQs; Ex. 10, Fasthoff Decl.

30.     If the Court concludes that notice should precede production, Applicant requests in the alternative an order giving the Account holder a defined period to appear anonymously and move to quash before X Corp. produces the records.

31.     A copy of the proposed subpoena is attached hereto as Exhibit 11.

## VIII.  CONCLUSION AND PRAYER

For these reasons, Applicant Richard Goatley respectfully requests that the Court enter an order:

(a)     granting this *ex parte* Application pursuant to 28 U.S.C. § 1782;

(b)     authorizing Applicant to serve the proposed subpoena, submitted with this Application, on X Corp.;

(c)     directing X Corp. to produce the records identified in the subpoena within 21 days of service, or within such other period as the Court directs;

(d)     deferring X Corp.'s notification of the Account holder as requested in Part VII, or in the alternative prescribing the notice procedure described there; and

(e)     granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Hank Fasthoff*
   Hank Fasthoff
   Texas Bar No. 24003510
   FASTHOFF LAW FIRM PLLC
   21 Waterway Ave., Suite 300
   The Woodlands, Texas 77380
   713.929.9314
   hank@fasthofflawfirm.com

**ATTORNEY FOR APPLICANT
RICHARD GOATLEY**